# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**John M.,**
**Respondent Below, Petitioner**

**vs)  No. 16-0534** (Kanawha County 09-D-2433)

**Linda M.,**
**Petitioner Below, Respondent**

**FILED**

**June 16, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner John M. ("petitioner husband"), by counsel Shawn D. Bayliss, appeals the Circuit Court of Kanawha County's February 4, 2016, order affirming the Family Court of Kanawha County's October 23, 2015, order dividing marital portions of petitioner's retirement accounts. Respondent Linda M. ("respondent wife"), by counsel Mark W. Kelley, filed a response in support of the circuit court's order. On appeal, petitioner husband argues that (1) the lower courts erred in finding that the parties' Property Settlement Agreement ("PSA") is unambiguous as to the division of petitioner's retirement accounts, and (2) alternatively, if this Court finds no ambiguity, the lower courts erred in allocating respondent wife portions of each of petitioner's retirement accounts under the PSA's unambiguous language.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties married in May of 1996 and divorced in 2010.[1] A final divorce order was entered in the Family Court of Kanawha County, West Virginia, which adopted the parties' PSA. In paragraph 13A, the PSA provides as follows:

> Husband and Wife shall each retain as their sole and separate property all retirement accounts held prior to the marriage in their sole and separate name, and will divide 50/50 via Qualified Domestic Relations Order any interest in any retirement account held which was acquired between the date of the marriage and the date of separation.

While this paragraph (entered into in 2010) references a QDRO, no QDRO was entered in this case until 2015. The parties' financial statements filed during the divorce proceedings listed the

---

[1]The parties had one child together, who is now of the age of majority.

1

following retirement accounts: (1) respondent wife's IRA/SEP accounts in the amount of $2504.55; (2) petitioner husband's 401K/403B accounts in the amount of approximately $262,000; and (3) petitioner husband's IRA/SEP accounts in the amount of approximately $50,000. The parties agree that petitioner husband currently has three retirement accounts, one of which is apparently from his current employer, but that only two of those three accounts are at issue in this appeal.[2]

In February of 2015, respondent wife filed a motion to modify child support. Petitioner husband moved for additional discovery on the child support issue. His discovery motion provided that additional discovery "is necessary for the [family] [c]ourt to fairly and accurately calculate child support herein, and to approve qualified domestic relations order(s) allocating each party their respective portion of the other's account(s)." Respondent wife contested the need for discovery, but agreed that a court may need to enter "outstanding qualified domestic relations orders."

In March of 2015, the family court granted petitioner husband's motion for additional discovery, in part, by permitting the "[u]tilization of [i]nterrogatories . . . limited to the [w]itness [d]isclosure and information requests necessary for the preparation of [q]ualified [d]omestic [r]elations [o]rders." Thereafter, petitioner husband filed a response to the motion to modify child support in which he asked that respondent wife be ordered to "disclose all of her retirement, stocks [sic], pension and 401k accounts with supporting documentation[.]"

In April of 2015, the family court held a hearing on the motion to modify child support. At that hearing, the parties expressed their intent to enter a settlement of the child support claims. By subsequent order, in addition to resolving the child support issue, the family court ordered the parties to "exchange all pertinent information, records [sic] regarding to [sic] their respective retirement, stock, pension, 401k, SEP, [and] defined[-] contribution plans within thirty (30) days of entry of this order."

In July of 2015, respondent wife filed a motion for contempt. In her motion, she asserted that petitioner husband failed to comply with the family court's order to exchange account information.[3] Petitioner husband responded that he provided respondent wife with partial account information but had a medical issue that delayed his ability to receive all pertinent records.

---

[2]Without citing to the record on appeal and without stating any dollar amounts, petitioner husband now asserts that he had the following three retirement accounts at the time of the final hearing in their divorce proceedings: (1) petitioner husband's "defined[-]benefit account from Union Carbide"; (2) petitioner husband's "defined[-]contribution account from Union Carbide"; and (3) petitioner husband's "defined[-]contribution account acquired from his current employer[.]" Respondent wife agrees with petitioner husband's assessment and states that only the two of those accounts are at issue in this appeal. She admits that the retirement account from petitioner husband's current employer has no marital component.

[3]Child support issues were also alleged, but are irrelevant to this appeal.

In September of 2015, on the day of the contempt hearing, petitioner husband filed a motion to dismiss the contempt proceeding. In his motion to dismiss, he argued that the language of paragraph 13A of the PSA precluded respondent wife from receiving "any portion of his Union Carbide pension account" because it was "acquired" prior to the marriage.[4] Noting that he may be entitled to a portion of respondent wife's retirement account, he requested that the parties simply maintain their separate retirement accounts and that the action be dismissed.

At the hearing, petitioner husband testified that he had three retirement accounts: (1) a defined-benefit account from Union Carbide; (2) a defined-contribution account from Union Carbide; and (3) a defined-contribution account from his current employer.[5] He produced documentation in support thereof. It appears from the record on appeal that petitioner husband argued that the PSA was ambiguous and should be construed to exclude any division of his defined-benefit account from Union Carbide because it was acquired prior to the marriage.

By final order entered on October 23, 2015, the family court found that petitioner husband was not in contempt of court because he produced account records as directed (albeit at the contempt hearing). Further, the family court found that the "language in the property settlement agreement could only be deemed ambiguous if read in a perverse manner, is in fact not ambiguous and is consistent with West Virginia law regarding the recognition that pension benefits which between [sic] the date of marriage and date of separation constitute marital assets."

Based on these findings, the family court concluded that respondent wife could claim an interest in petitioner husband's defined-benefit accounts from Union Carbide "based upon the standard coverture factor." The family court further concluded that petitioner husband's "defined-contribution plan is wholly marital and [respondent wife] is entitled to 50% of the value of that plan." The motions for contempt and to dismiss were denied, and the parties were ordered to divide petitioner husband's retirement accounts.

Petitioner husband appealed the family court's final order to the circuit court. In his appeal, he argued that the family court erred in (1) finding that he refused to provide documentation of his retirement accounts; (2) finding that the PSA language was unambiguous and was consistent with West Virginia law; (3) allocating respondent wife any portion of his retirement accounts; and (4) increasing respondent wife's attorney's fees from $250 to $500. Respondent wife filed a response in support of the family court's order.

By final order entered on February 4, 2016, the circuit court affirmed the family court's October 23, 2015, order. The circuit court found that the family court (1) did not find that petitioner husband refused to provide documentation of his retirement accounts, as he claimed in his appeal; (2) committed no error in finding that the PSA language was unambiguous and was consistent with West Virginia law and in allocating respondent wife a portion of his retirement accounts; and (3) committed no error in increasing the attorney's fee award from the stated

---

[4]The motion references only one retirement account, not two.

[5]No transcript or video of the contempt hearing was included in the appendix record.

3

amount at the hearing of $250 to the amount of $500 in the final, written order. With regard to the PSA, the circuit court noted that petitioner husband had previously sought discovery specifically for the purpose of dividing retirement accounts and had waited until the "last possible moment" on the day of the contempt hearing to argue that the PSA excluded such division. The circuit court also noted, as had the family court, that the parties briefly mentioned retirement accounts at the final divorce hearing, but that the parties and court agreed at that time to address the issue through QDROs, which was not done. For those reasons, the circuit court concluded that petitioner was not entitled to relief. This appeal followed.

We have explained that

> [i]n reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syllabus, *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

On appeal, petitioner husband first argues that the lower courts erred in finding that the PSA was unambiguous. As noted above, the relevant portion of the PSA provides as follows:

> Husband and Wife shall each retain as their sole and separate property all retirement accounts held prior to the marriage in their sole and separate name, and will divide 50/50 via Qualified Domestic Relations Order any interest in any retirement account held which was acquired between the date of the marriage and the date of separation.

Petitioner husband argues that the language "any interest in any retirement account held which was acquired between the date of the marriage and the date of separation" is ambiguous. We have held that "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syl. Pt. 1, *Berkeley Cty. Pub. Serv. Dist. v. Vitro Corp. of Am.*, 152 W.Va. 252, 162 S.E.2d 189 (1968). Generally, "[c]ontract language is considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken." Syl. Pt. 6, *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 212 W.Va. 275, 569 S.E.2d 796 (2002).

Although somewhat unclear from his brief, petitioner husband appears to argue that the use of the term "acquired" may apply to the term "interest" (to "divide 50/50 . . . any interest . . . acquired" during the marriage) or to the term "account" (to "divide 50/50 . . . any . . . account . . . acquired" during the marriage). Petitioner husband appears to argue that the alleged ambiguity should be construed against respondent wife, whose attorney drafted the PSA in 2010. *See Lee v. Lee*, 228 W.Va. 483, 487, 721 S.E.2d 53, 57 (2011) (stating that "ambiguous terms should be construed against the party who drafted the document").

4

Respondent wife counters that the PSA is clearly unambiguous. She claims that the PSA's language merely restated the law in this State that interest in retirement accounts is subject to division, if that interest was acquired during the marriage. *See* W.Va. Code § 48-1-233 (providing that "'[m]arital property' means: [a]ll property and earnings acquired by either spouse during a marriage, including every valuable right and interest"); *Cross v. Cross*, 178 W.Va. 563, 363 S.E.2d 449 (1987) (holding that pension plan earned during marriage is marital asset subject to division under statutory definition). Respondent wife also asserts that petitioner husband ignores the PSA's use of the phrase "any interest in[,]" which would be rendered superfluous under his argument. We agree.

The language of the PSA at issue herein contains two clauses attached by a conjunction. The first clause allows each party to retain retirement accounts held prior to the marriage. The second clause provides for the division of "any interest" in retirement accounts if that interest was acquired between the date of the marriage and the separation. The ambiguity petitioner husband reads into this passage requires the phrase "any interest" to be ignored and rendered superfluous. As such, we find no merit to petitioner's first assignment of error.

Petitioner husband's second ground for appeal is that, if the language in the PSA is unambiguous, then the lower courts failed to apply it as written. We have held that

> "[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syllabus Point 1, *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962).

Syl. Pt. 3, *Estate of Tawney v. Columbia Nat. Res., L.L.C.*, 219 W.Va. 266, 633 S.E.2d 22 (2006).

Petitioner husband claims that the PSA "means what is says, that all accounts held prior to the marriage were to be retained by [that] party to be their sole and separate property." However, we find that petitioner husband's argument, again, ignores the language included in the second clause that "any interest" is to be divided, if acquired during the marriage. Having reviewed the parties' arguments, the record, and the legal authority, we find no error in the lower courts' finding that petitioner's retirement accounts (which undisputedly acquired interest during the marriage) were subject to division under the clear language of the PSA.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 16, 2017

5

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker